**Larry BRIGGS, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 01–552C.**

United States Court of Federal Claims.

Nov. 4, 2002.[1]

Michael Owen Crain, Crain & Davis, LLC, Athens, GA, for plaintiffs.

Steven John Gillingham, U.S. Department of Justice, Washington, D.C., for defendant.

*Order*

SYPOLT, Judge.

On May 1, 2002, the court ordered plaintiffs to "brief the legal and policy grounds for (or against) deciding whether to certify a collective action by 'similarly situated' former employees" pursuant to the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 216(b), *"prior* to notifying the prospective class members of the possibility of opting into an action."

As in their prior brief, plaintiffs contend that the analysis set forth by the Supreme Court in *Hoffmann–La Roche v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), should serve as a guide. In *Hoffmann–La,* the Court ordered the employer to produce the names and addresses of discharged employees and authorized plaintiffs to send all employees a court-approved notice and consent document. *Hoffmann–La,* however, does not hold that a court is required to order the issuance of such notices as plaintiffs request, nor does it raise such a presumption. *Hoffmann–La* stands merely for the proposition that it is within the *discretion* of the court to authorize notices pursuant to § 216(b). *Id.* at 169, 110 S.Ct. 482.

Plaintiffs submit the affidavit of their lead counsel, Michael O. Crain, to provide information showing that similarly situated potential plaintiffs exist. Mr. Crain alleges (1) that three offices within the state of Georgia had "the same problem of failing to pay for overtime," (2) that "the failure to pay overtime ... had been an unlawful denial of overtime wages, and that most likely the failure to pay those wages was wilful," and (3) that he "interviewed an individual in Arizona who had personally been denied overtime ... and who reported to me that he had observed many other census employees who had been similarly denied overtime while

1. This order originally was filed on October 9, 2002. The order is being re-issued for publication in response to defendant's October 23, 2002 request.

working on the Year 2000 Census. I also learned of workers from four (4) other states with similar claims." Pls.' Aff. at 3. Plaintiffs provide the court with no other alleged evidence of coordinated action by the Census Bureau to systematically deprive its workers of overtime benefits.

The court concludes that, because certification is not warranted in this case, it would be a waste of judicial resources and raise unrealistic expectations in putative class members to give notice prior to certification. Moreover, notice is not warranted in this case because the key standard, whether plaintiffs have demonstrated that potential class members are "similarly situated," 29 U.S.C. § 216(b), is not met.

### Discussion

The term "similarly situated" is defined neither in the FLSA nor in its implementing regulations. *See id.* The court is aware of no circuit precedent that controls its application of the "similarly situated" requirement. Courts have identified at least three different approaches when considering this requirement. Some courts have incorporated the provisions of Rule 23 of the Federal Rules of Civil Procedure (FRCP) into their interpretation of the "similarly situated" requirement. *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir.2001). Other courts suggest a similar approach utilizing a predecessor to FRCP 23, affording greater discretion to the court. *Id.*

Alternately, many courts take a two-step *ad hoc* approach when considering whether members of a class are similarly situated. *Id.* at 1103; *Bayles v. American Med. Response*, 950 F.Supp. 1053, 1066 (D.Colo.1996). During the first step, courts use pleadings and affidavits to determine whether to certify the class on a conditional basis. *Hipp v. Liberty Nat'l Life Ins., Co.*, 252 F.3d 1208, 1218 (11th Cir.2001). Following conditional certification, potential class members are given notice and the opportunity to "opt-in." The second step usually takes the form of a court decision, on a motion by defendant to "de-certify" the class, of whether the "opt-in" plaintiffs are similarly situated. If the court concludes that they are not, it will de-certify

the class and dismiss the "opt-in" plaintiffs without prejudice. If the court concludes that the claimants are similarly situated, trial will continue as a collective action. *Id.*

■ Thus, courts have discretion whether to certify a class before notification of potential "opt-in" plaintiffs. *Id.* at 1218. However, without a modest showing that collective action is appropriate, the court may neither certify a collective action, nor issue notice to potential plaintiffs.

■ Plaintiffs nevertheless contend that the collective action procedure under § 216(b) is to be liberally construed and applied so as to accomplish the broad remedial purposes of the FLSA, *see· Braunstein v. Eastern Photographic Lab., Inc.*, 600 F.2d 335, 336 (2d Cir.1978), and again urge the court to accept the standard set forth in *Jackson v. New York Tel. Co.*, 163 F.R.D. 429 (S.D.N.Y.1995) that, in the early stages of litigation, plaintiffs may provide a mere allegation of " 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.' " *Id.* at 431 (citing *Schwed v. General Electric*, 159 F.R.D. 373, 376 (N.D.N.Y.1995)). Plaintiffs argue that their allegations, supported by the affidavit of Mr. Crain, meet that standard.

Defendant again points out that the allegations of plaintiffs' complaint indicate that the determination of entitlement will be highly fact-specific as to each plaintiff and thus, this case is not appropriate for collective action status. (However, defendant does not oppose such status for plaintiffs from the same local census office (LCO) in Georgia, recognizing that joinder improves efficiency and that all plaintiffs in a single LCO may be in factually similar circumstances, for example, sharing the same supervisor, who would necessarily have a significant role in the litigation of claims. Def. Br. at 1.)

The concern expressed in *Hoffmann–La* that docket management would be compromised if multiple suits involving the same issue flooded the docket, *Hoffmann–La*, 493 U.S. at 172–73, 110 S.Ct. 482, does not exist here. First, there is no evidence that the court will be flooded with similar lawsuits. Second, the court may use less-drastic proce-

dural remedies should individuals file similar cases. Third, each incident is highly fact-specific and certification as a collective action would limit plaintiffs' attorneys' ability to adequately represent the interests of their clients as required by Rule 11 of the Rules of the United States Court of Federal Claims. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

Although collective actions are designed to avoid duplicative suits, plaintiffs have provided no substantial evidence that these suits might occur. Since this lawsuit began, no consenters have joined this suit and no evidence exists indicating that the resources of this court will be taxed by an inordinate number of additional lawsuits. Moreover, in the event that such cases were filed, this court could, if necessary, consolidate them pursuant to RCFC 41.

A similar case with over 2,300 plaintiffs, *Christofferson v. United States*, No. 01–495C (Fed.Cl.), is now before this court. Defendant contends, however, that the number of *Christofferson* plaintiffs has no bearing on this suit, because its scope is broader. The plaintiffs in *Christofferson* include claims involving lost or missing record disputes, claims for overtime by exempt employees who are not eligible for overtime, and claims that the Census Bureau should have allowed employees to work overtime. Defendant argues, that unlike those in *Christofferson,* the claims alleged in plaintiffs' complaint here are narrow and particularized, making them well-suited for individual litigation and adjudication.

Plaintiffs have not satisfied their burden of making even a modest factual showing that they are entitled to certification because they are similarly-situated with other, un-named potential plaintiffs who were "victims of a common policy or plan that violated the law." *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y.1997). Mr. Crain's allegation that he was aware of workers in as many as five states who had failed to receive overtime pay is insufficient to support "a national notice of action" because it offers no specific support for the allegations of a violation (e.g., names, dates, places, types of unlawful ac-

tion, etc.). This evidence is insufficient. *See Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358 (M.D.Ala.1999). Unlike in *Jackson,* where the former employer "identified a *specific management plan* that allegedly led to the dismissal of the putative class members," plaintiffs have identified no evidence of a common plan or scheme that led to the denial of overtime payment. Order, 5/1/02 at 6.

Even if plaintiffs satisfactorily made a modest factual showing of a plan, this court has full discretion to reject plaintiffs' petition for a collective action certification prior to issuing notice to putative class members. The authority of a court to manage its own affairs lies at the heart of the *Hoffmann–La* decision: the Supreme Court permitted court authorization of notice because it "serve[d] the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffmann–La*, 493 U.S. at 172, 110 S.Ct. 482.

### Conclusion

Plaintiffs' failure to provide any factual evidence that defendant used a common scheme or plan to defraud its employees prevents this court from certifying a collective action. The court thus concludes that issuance of such notice when certification will not be granted would be a futile act, would delay the disposition of this case as to the plaintiffs presently involved, and itself may cause this case to become unmanageable. Accordingly, plaintiffs' motion is denied.