Eugene A. FISHER, Trustee, Seymour P. Nagan Irrevocable Trust, for itself and as Representative of all similarly situated taxpayers, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 04–1726T.

United States Court of Federal Claims.

Jan. 6, 2006.

Burgess J.W. Raby, Raby Law Office, Tempe, Arizona, for plaintiff.

Benjamin C. King, Jr., Trial Attorney, Tax Division, Court of Federal Claims Section, David Gustafson, Acting Chief, Court of Federal Claims Section, Eileen J. O'Connor, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

### OPINION AND ORDER

GEORGE W. MILLER, Judge.

This matter is before the Court on plaintiff's Motion for Class Certification pursuant to Rule 23 of the Rules of the Court of Federal Claims ("RCFC"). Oral argument was deemed unnecessary. For the reasons set forth below, plaintiff's Motion for Class Certification is DENIED without prejudice.

### BACKGROUND [1]

On June 28, 1990, plaintiff Seymour P. Nagan Irrevocable Trust ("the Trust") acquired a $500,000 face amount life insurance policy issued by Sun Life Assurance Compa-

---

[1] The facts set forth in this section are either undisputed or alleged and assumed to be true for purposes of the pending motion. They do not constitute findings of fact by the Court.

ny of Canada ("Sun Life Assurance"). Pl.'s Proposed Findings of Uncontroverted Fact ¶ 1. At the time that plaintiff acquired the policy, Sun Life Assurance was a mutual life insurance company. *Id.* ¶ 3. The policy purchased by plaintiff was a "participating policy" entitled to receive dividends from the company declared out of surplus, distributions in the event of a liquidation, and voting rights in the election of directors and other matters relating to the company. *Id.* ¶ 5.

Sun Life Assurance subsequently converted from a mutual life insurance company to a stock life insurance company. *Id.* ¶ 8. The process of converting from a mutual life insurance company to a stock life insurance company is known as "demutualization." *See In re MetLife Demutualization Litig.,* 229 F.R.D. 369, 371 (E.D.N.Y.2005). In the demutualization of a mutual life insurance company, the rights of participating policy holders in surplus and other net assets of the company are exchanged for the rights of stockholders, while they continue to retain their rights as policyholders pursuant to their life insurance contracts. Compl. ¶ 12.

On March 22, 2000, as the result of the demutualization of Sun Life Assurance, plaintiff became entitled to receive 3,892 shares of common stock of Sun Life Financial Services ("Sun Life Financial"). *Id.* ¶ 13. Plaintiff elected to have the Sun Life Financial shares sold upon issuance. *Id.* ¶ 14. Plaintiff received gross sales proceeds of $33,082, and incurred a sales commission of $1,323, resulting in net proceeds of $31,759 from the Sun Life Financial sale. Pl.'s Proposed Findings of Uncontroverted Fact ¶ 10.

Plaintiff reported the net proceeds of $31,759 from the Sun Life Financial sale on its income tax return for 2000. *Id.* ¶ 11. Plaintiff utilized a tax basis of zero in computing the tax due on the sale of Sun Life Financial stock, based upon advice plaintiff had received in writing from Sun Life Assurance. *Id.* Thus, plaintiff treated the full $31,759 as subject to tax, and plaintiff paid federal income tax of $5,725 on this amount. *Id.*

On February 11, 2004, plaintiff filed a claim for refund with the IRS for the $5,725 in taxes that it had paid as a result of the Sun Life Financial sale in 2002. Compl. ¶ 2. Plaintiff's refund request stated in relevant part:

> The issuance of 1099 Forms to individual policyholders receiving stock or cash in exchange for their membership interests in a Mutual Life Insurance Co., and the treatment of such distributions as subject to capital gains with a zero basis, either currently in the case of cash received, or in the future in the case of stock received when subsequently sold, is totally incorrect and unsupportable.

Compl., Ex. A at 3.

Defendant rejected plaintiff's claim on April 9, 2004. Compl. ¶ 2. On December 1, 2004, plaintiff filed suit in this court seeking a refund of $5,725 in federal income tax that the Trust had paid on the Sun Life Financial sale. *Id.* ¶¶ 1–2. In addition to plaintiff's individual claim, the Complaint requested that the Court "[d]etermine that this action is a proper class action, certify Plaintiff as class representative under Rule 23 of the Rules of the Court, and certify Plaintiff's counsel as class counsel ...." *Id.* ¶ 17(A).

On May 23, 2005, the Court ordered plaintiff to file a Motion for Class Certification on or before June 23, 2005. On June 24, 2005, plaintiff filed a Motion for Class Certification, moving the Court to certify a class consisting of:

> ... all those U.S taxpayers who (1) were life insurance policyholders in mutual life insurance companies that have demutualized (i.e., converted from mutual companies to stock companies), and (2) have also:
>
> (a) paid Federal income tax on cash received in lieu of stock in the demutualization transaction or paid Federal income tax on the subsequent disposition of the stock received in the demutualization transaction based on the Defendant's stated position that they were not entitled to deduct any amount of tax basis in connection with the demutualization payments or the sale of the stock received;
>
> (b) filed claims with Defendant seeking refund of part or all of the tax paid in the transactions referred to in (a); and

(c) have either had those claims denied by Defendant or have had Defendant [take] no action on those claims and more than six months has passed from the date of filing those claims with the Defendant as of the date that the Court certifies the class or as of some other date selected by the Court.

Pl.'s Mot. for Class Cert. at 1–2. On July 21, 2005, defendant filed an Opposition to the Plaintiff's Motion for Class Certification. On August 4, 2005, plaintiff filed a Response to Defendant's Opposition to Plaintiff's Motion for Class Certification. By leave of the Court, on August 19, 2005, defendant filed a Sur–Reply to Plaintiff's Response and on August 31, 2005, plaintiff filed a Response to Defendant's Sur–Reply in Connection With Plaintiff's Motion for Class Certification.

### DISCUSSION

### I. Jurisdiction

This Court has jurisdiction over Federal tax refund suits pursuant to 28 U.S.C. § 1491(a) (2000). *See D'Avanzo v. United States,* 67 Fed.Cl. 39, 40 (2005). A jurisdictional prerequisite in federal income tax refund suits in the Court of Federal Claims is that the taxpayer make full payment of the tax liability, penalties, and interest at issue. *Mass. Mut. Life Ins. Co. v. United States,* 66 Fed.Cl. 217, 224 (2005); *Hunsaker v. United States,* 66 Fed.Cl. 129, 131 (2005). In addition, the taxpayer must have filed a claim for refund with the IRS for the amount of tax in controversy. *See* 26 U.S.C. § 7422(a) (2000).

The Court has jurisdiction over plaintiff's individual claim because plaintiff alleges that he paid income tax on the sale of the Sun Life Financial stock, filed a claim for refund, and the claim was subsequently denied by the IRS. Compl. ¶ 2. According to plaintiff's proposed definition of the prospective class, all class members would also satisfy the jurisdictional prerequisites. The class as defined would be limited to individuals who have paid tax on cash or stock received in a demutualization transaction and subsequently filed claims for refunds with the IRS. Pl.'s Mot. for Class Cert. at 1.

### II. Class Actions in the Court of Federal Claims

Class actions in the Court of Federal Claims are governed by RCFC 23, which was completely rewritten in 2002. *See* RCFC 23 Rules Comm. Note. As revised, RCFC 23 is patterned on Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and is similar in both language and effect, although some differences do exist.[2] *Berkley v. United States,* 59 Fed.Cl. 675, 681 (2004). Unlike FRCP 23, RCFC 23 permits only opt-in classes, not opt-out classes.[3] *Id.* at 704 ("[T]he Rules of this court do not contemplate an opt-out class."); RCFC Rule 23 Comm. Note ("[U]nlike the FRCP, the court's rule contemplates only opt-in class certifications, not opt-out classes."). Opt-out classes were viewed as inappropriate in this Court because of the need for specificity in money judgments against the United States, and the fact that the court's injunctive powers—the typical focus of an opt-out class—are more limited than those of a district court. *Berkley,* 59 Fed.Cl. at 704 (quoting RCFC 23 Rules Comm. Note).

RCFC 23 provides as follows regarding class certification:

(a) Prerequisites to a Class Action. One or more members of a class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

---

**2.** Owing to the fact that the language of RCFC 23 and FRCP 23 is, in many regards, identical, this opinion relies upon decisions that have construed the relevant portions of the latter rule.

**3.** *Compare Taylor v. United States,* 41 Fed.Cl. 440, 448 (1998) (permitting an opt-out class prior to the 2002 revisions to RCFC 23).

(1) the United States has acted or refused to act on grounds generally applicable to the class; and

(2) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class; and (C) the difficulties likely to be encountered in the management of a class action.

RCFC 23(a) and (b). In order to prevail on a motion for class certification, a plaintiff must satisfy both the prerequisites set forth in RCFC 23(a) and the requirements to maintain a class action set forth in RCFC 23(b).

The Rules Committee Note accompanying RCFC 23 explains that "[i]n the main," the rule adopts the criteria for certifying and maintaining a class action set forth in *Quinault Allottee Ass'n. v. United States*, 197 Ct.Cl. 134, 453 F.2d 1272 (1972). *See* RCFC 23 Rules Comm. Note. In *Quinault*, which was decided prior to the 2002 revisions to RCFC 23, the court set forth the following requirements for class certification:

(1) members must constitute a large but manageable class; (2) there is a question of law common to the whole class; (3) a common legal issue overrides separate factual issues affecting the individual members; (4) the claims of the present plaintiffs are typical of the claims of the class; (5) the government must have acted on grounds generally applicable to the whole class; (6) the claims of many claimants must be so small that it is doubtful they

would be otherwise pursued; (7) the party plaintiffs must adequately and fairly protect the interests of the class without conflicts of interest; and (8) the prosecution of individual lawsuits must create a risk of inconsistent or varying adjudications.[4]

197 Ct.Cl. at 140–41, 453 F.2d at 1276, *see also Testwuide v. United States*, 56 Fed.Cl. 755, 761 (2003); *Buchan v. United States*, 27 Fed.Cl. 222, 224 (1992). The *Quinault* criteria serve to amplify and clarify the requirements of RCFC 23.[5] *See Barnes v. United States*, 68 Fed.Cl. 492, 495 (2005).

As the party seeking certification, plaintiff bears the burden of establishing that the requirements of RCFC 23 have been met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (applying FRCP 23); *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737–38 (5th Cir.2003) ("The party seeking certification bears the burden of demonstrating that the requirements of rule 23 have been met."); *Briggs v. United States*, 54 Fed.Cl. 205, 207 (2002) ("Plaintiffs have not satisfied their burden of making even a modest factual showing that they are entitled to certification because they are similarly-situated with other, un-named potential plaintiffs ...."); *Abel v. United States*, 18 Cl.Ct. 477, 478 (1989) ("[T]he burden of proof rests on plaintiffs to show that, under their particular circumstances, a class action would be appropriate.") These requirements are in the conjunctive; hence, a failure to satisfy any one of them is fatal to class certification. *Barnes*, 68 Fed.Cl. at 494; *see also Testwuide*, 56 Fed.Cl. at 761.

Defendant asserts that in determining whether plaintiff has established the requirements for class certification, the Court should be guided by the proposition that the Court of Federal Claims has generally disfavored class actions and has only permitted class certification in extraordinary cases. *See*

---

**4.** The eighth factor, the risk of inconsistent adjudications, is no longer relevant because the Federal Circuit hears all appeals from the district courts and this court in cases involving requests for money damages from the government. *See Moore v. United States*, 41 Fed.Cl. 394, 400 (1998); *Taylor v. United States*, 41 Fed.Cl. at 447.

**5.** However, in the event that there is a conflict between the *Quinault* criteria and the text of RCFC 23, the rule must control. *Barnes*, 68 Fed.Cl. at 495.

Def.'s Opp. to Pl.'s Mot. for Class Cert. at 2–3. To support this proposition, defendant relies on a series of cases pre-dating the 2002 revisions to RCFC 23. *See e.g., Hannon v. United States,* 31 Fed.Cl. 98, 102 (1994); *O'Hanlon v. United States,* 7 Cl.Ct. 204, 206 (1985); *Cooke v. United States,* 1 Cl.Ct. 695, 698 (1983); *Saunooke v. United States,* 8 Cl.Ct. 327, 329 (1985). At the outset, it appears that there was never any basis for the language in these cases indicating that class actions are "disfavored." *See Barnes,* 68 Fed.Cl. at 501 ("Research reveals the quoted language to be a full-fledged shibboleth, and, as is generally true of legal fictions, there are hosts of problems with this often-reiterated, but little-analyzed, proposition."); *Taylor v. United States,* 41 Fed.Cl. at 444 ("[T]here appears to be no basis for stating that class actions are 'generally disfavored' and should be used only in 'rare and extraordinary cases.' ").

However, even if class actions were disfavored in the Court of Federal Claims at one time, this ceased to be the case after the promulgation of the 2002 revisions to RCFC 23. *See Barnes,* 68 Fed.Cl. at 502. Prior to 2002, RCFC 23 provided no direct guidance as to how to analyze a potential class certification. *Id.; Christopher Vill., L.P. v. United States,* 50 Fed.Cl. 635, 641 (2001) ("[T]he rule offers little guidance for the court to follow in considering class certification."). As previously discussed, RCFC 23 was completely rewritten in 2002 to be modeled on the comparable FRCP. *See* RCFC 23 Rules Comm. Note; *see also Berkley v. United States,* 59 Fed.Cl. at 681. The continued "disfavoring" of class actions would be contrary to the objective of bringing the court's procedures, at least with respect to certification of opt-in classes, more closely in line with the procedures used by district courts. *Barnes,* 68 Fed.Cl. at 502.

Therefore, in determining whether class certification should be granted in this case, the Court will not be guided by the proposition that class actions are generally disfavored, but will instead objectively examine the evidence presented by plaintiff to determine whether, in this particular instance, the criteria for class certification have been met.

### III. RCFC 23(a): Prerequisites to Class Certification

In order to maintain a class action in this court, plaintiffs must first satisfy the four prerequisites identified in RCFC 23(a).

### A. Numerosity/Impracticability of Joinder

RCFC 23(a)(1) requires plaintiff to demonstrate that the class is so numerous that joinder of all members is impracticable. Plaintiff provided the Court with a list of 33 mutual life insurance companies that have demutualized and identified the number of policies for each company with voting rights. Pl.'s Mot. for Class Cert., Ex. A. Plaintiff then asserts that "if only ½ of one percent of a potential 50,000,000 policyholders filed refund claims, that would still be 250,000 claimants." Pl.'s Mot for Class Cert. at 4. Numerically, this is correct, but it fails to establish with any reasonable degree of certainty that 1/2 of one percent of the 50,000,000 policyholders did in fact file such claims.

Speculation as to the number of parties involved is not sufficient to satisfy the requirements of Rule 23(a). *Edge v. C. Tech Collections, Inc.,* 203 F.R.D. 85, 89 (E.D.N.Y. 2001) (quoting *Demarco v. Edens,* 390 F.2d 836, 845 (2d Cir.1968)) ("Where the plaintiff's assertion of numerosity is pure speculation or bare allegations, the motion for class certification fails."); *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989); *Grimes v. Pitney Bowes, Inc.,* 100 F.R.D. 265, 269–70 (N.D.Ga.1983)("[M]ere allegations of numerosity are insufficient to meet this prerequisite."); 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1762 (3d ed.2005). While it is true that plaintiff is not required to specify the exact number of persons in the class, conclusory allegations regarding numerosity standing alone are not sufficient. *Marcial,* 880 F.2d at 957. Plaintiff's assumption that at least ½ of one percent of policyholders filed claims is pure speculation, and as such, fails to satisfy RCFC 23(a)(1).

Plaintiff argues that numerosity would be presumed at a level of 40 class members,

relying on *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2nd Cir. 1995). Pl.'s Mot. for Class Cert. at 4. As a preliminary matter, plaintiff has failed to provide evidence that there are even 40 prospective plaintiffs. Furthermore, the Court of Federal Claims has held that substantially larger numbers of plaintiffs were insufficient to satisfy the requirement that joinder was impracticable. *See Buchan,* 27 Fed.Cl. at 224–25 (finding that a group of 318 prospective class members did not "weigh heavily" in favor of class certification); *Abel v. United States,* 18 Cl.Ct. 477, 478–79 (1989) (finding that numerosity was not satisfied where there were 1,218 plaintiffs joined to the action). Determination of practicability of joinder depends on all the circumstances surrounding a case, not on mere numbers. *Robidoux v. Celani,* 987 F.2d 931, 936 (2nd Cir.1993). Plaintiff has failed to provide sufficient information on the prospective class members to enable the Court to make this determination. In fact, plaintiff has failed to provide concrete evidence that a single prospective class member other than plaintiff exists.

Plaintiff argues that because all proposed members of the class have filed tax returns with defendant, "defendant, rather than the plaintiff, is thus the party in a position to ascertain the existence and size of the suggested class." Pl.'s Resp. to Def.'s Opp. to Pl's Mot. for Class Cert. at 3. However, as discussed *supra* at Section II, it is plaintiff, not defendant, who bears the burden of demonstrating that the prerequisites for class certification have been met. Plaintiff has not requested the opportunity to conduct discovery to ascertain the number of prospective class members from defendant. The Court granted defendant the opportunity to conduct discovery to ascertain facts that it alleged were essential to justify its opposition to plaintiff's Motion for Partial Summary Judgment. *See* May 23, 2005 Order at 4–6. Plaintiff had no reason to believe that a similar opportunity would not be afforded to plaintiff as well in support of its Motion for Class Certification.

For these reasons, plaintiff has not met its burden of demonstrating that the prospective class would be so numerous that it would be impracticable to join all members. As discussed *supra* at Section II., the failure to satisfy any one of the prerequisites is fatal to a motion for class certification. Therefore, plaintiff's Motion for Class Certification must be denied based upon numerosity alone. However, the denial is without prejudice. The Court will permit plaintiff to present additional evidence demonstrating that the prospective class is so numerous that joinder of all members would be impracticable, should it choose to file a renewed Motion for Class Certification. *See* RCFC 23(c)(1)(C). The Court recognizes that "Rule 23(c)(1) provides [p]laintiffs with a *limited* opportunity to adduce additional facts: It is not a Trojan Horse by which [p]laintiffs may endlessly reargue the legal premises of their motion." *Gardner v. First Am. Title Ins. Co.,* 218 F.R.D. 216, 218 (D.Minn.2003). However, in this instance, additional facts are necessary to enable the Court to determine whether class certification is appropriate.

Because the Motion for Class Certification may be renewed, in the interests of fully analyzing all issues and assisting the parties in any further briefing, the Court will proceed to analyze the remaining prerequisites under RCFC 23(a) as well as the requirements to maintain a class action under RCFC 23(b).

## B. Common Questions of Law or Fact

RCFC 23(a)(2) requires that there be questions of law or fact common to the class. The requirement for a common question of law is satisfied when there is one core common legal question that is likely to have one common defense. *See Taylor,* 41 Fed.Cl. at 446; *Favreau v. United States,* 48 Fed.Cl. 774, 778 (2000). The threshold of "commonality" is not high. *Jenkins v. Raymark Indus.,* 782 F.2d 468, 472 (5th Cir.1986). Rather, to meet RCFC 23(a)(2), the questions underlying the claims of the class merely must share essential characteristics, so that their resolution will advance the overall case. *Barnes,* 68 Fed.Cl. at 496.

In Plaintiff's Motion for Class Certification, plaintiff asserts that "[t]he only substantive issue of relevance in this case is the

technical tax issue ... of whether the tax basis of the stock received by policyholders in those demutualization transactions is some amount greater than zero, and how that amount is to be determined." Pl.'s Mot. for Class Cert. at 5. The Court does not necessarily agree that this is the only substantive issue of relevance in this case, but such a finding is not necessary to establish common questions of law or fact. Rather, the test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members. *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir.1993).

Members of the prospective class would all be affected by resolution of the common issue of whether the tax basis of stock received in demutualization transactions should be greater than zero, and if so, how that amount should be determined. Thus, plaintiff has satisfied the prerequisite of commonality. Defendant's argument that individual issues predominate over common issues of fact and law does not affect this finding; a common question need only exist, not predominate, for the commonality requirement for certification of a class action to be satisfied. *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 174 (E.D.Pa.1997) ("Under 23(a)(2) a common question need only exist, not predominate, for the requirement to be satisfied."); *see also* 7A WRIGHT, MILLER & KANE § 1763.

## C. Typicality

■ RCFC 23(a)(3) requires that the claims of the representative parties be typical of the claims of the class. The threshold requirement for typicality is also not high. *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir.1993); *Berkley v. United States*, 45 Fed.Cl. 224, 232 (1999), *settled by* 59 Fed.Cl. 675 (2004) ("In the past, the typicality requirement in the *Quinault* test has not been found to be unusually restrictive."). Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2nd Cir.1992).

The Court recognizes some individual differences likely exist between plaintiff and other prospective class members. However, typicality may be satisfied even if some factual differences exist between the claims of the named representatives and the claims of the class, provided that the named representatives' claims share the same essential characteristics as the claims of the class at large. *Piazza v. Ebsco Indus.*, 273 F.3d 1341, 1351 (11th Cir.2001); *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 572 F.Supp. 1494, 1499 (N.D.Ill.1983). In this case, all prospective plaintiffs would be proceeding under essentially the same legal claim; that is, that the tax basis of policyholders in demutualization transactions should be some amount greater than zero. Therefore, the Court finds that plaintiff has satisfied the modest threshold for establishing that its claims are "typical" of those of the class it seeks to represent.

## D. Adequacy of Representation

■ RCFC 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. In making this evaluation, the court first must consider whether class counsel is "qualified, experienced and generally able to conduct the litigation." *Barnes*, 68 Fed.Cl. at 499 (quoting *In re Drexel Burnham Lambert Group*, 960 F.2d at 291); *Reynolds v. Giuliani*, 118 F.Supp.2d 352, 390 (S.D.N.Y.2000). Plaintiff notes that plaintiff's counsel and his staff have had substantial experience with tax cases, including litigation in the U.S. Tax Court and the Court of Appeals for the Ninth Circuit. Pl.'s Mot. for Class Cert. at 5–6. However, plaintiff has failed to provide any specific information regarding plaintiff's counsel's education, background, and experience; nor has plaintiff identified any representative cases previously handled by its counsel.

In addition, plaintiff has failed to present any evidence that its counsel has prior experience in class action litigation. RCFC 23(g) provides that in appointing class counsel, the Court must consider "counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the

action." Plaintiff has not provided the Court with sufficient information to make such an assessment. It is unclear based upon the evidence presented whether plaintiff's counsel has the resources necessary to litigate on behalf of a class that plaintiff believes could potentially encompass 250,000 members. The Court does not suggest that plaintiff's counsel is incapable of handling such a class action, but merely finds that plaintiff has thus far failed to present the Court with sufficient evidence to make such a showing.

To establish adequacy of representation, plaintiff must also demonstrate that the class members do not have interests that are antagonistic to one another. *Barnes,* 68 Fed. Cl. at 499 (quoting *Amchem Prods.,* 521 U.S. at 594, 117 S.Ct. 2231), *Reynolds,* 118 F.Supp.2d at 390. There are no apparent conflicts of interest in this case. Plaintiff asserts that its trustee is a competent tax professional, being both an attorney and a CPA. Pl.'s Mot. for Class Cert. at 5. Therefore, the Court has no reason to believe that he is incapable of effectively representing the interests of the class. However, plaintiff has failed to discuss this element in its Motion for Class Certification.

The party seeking class certification has the burden of establishing all elements of Rule 23(a), including the adequacy of representation. *London v. Wal–Mart Stores, Inc.,* 340 F.3d 1246, 1253 (11th Cir.2003); *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 481 (5th Cir.2001), *reh'g denied,* 279 F.3d 313 (2002). Plaintiff has failed to meet this burden based upon the evidence presented. However, the Court will permit plaintiff to present additional evidence on the RCFC 23(a) prerequisites of numerosity and adequacy of representation should it choose to renew the Motion for Class Certification.

## IV. RCFC 23(b): Class Actions Maintainable

The Court will also address the requirements to maintain a class action set forth in RCFC 23(b). As with the prerequisites set forth in RCFC 23(a), the requirements to maintain a class action in RCFC 23(b) are conjunctive, and a failure to satisfy any of them is fatal to class certification. *Barnes,* 68 Fed.Cl. at 494.

## A. The United States Acted or Refused to Act on Grounds Generally Applicable to the Class

■ RCFC 23(b)(1) mirrors the language of the first clause of Fed.R.Civ.P. 23(b)(2) ("the party opposing the class acted or refused to act on grounds generally applicable to the class ..."). Courts have interpreted this requirement to mean that the party opposing the class either has acted in a consistent manner toward members of the class so that the opposing party's actions may be viewed as part of a pattern of activity, or has established or acted pursuant to a regulatory scheme common to all class members. 7AA WRIGHT, MILLER & KANE § 1775.

The prospective class includes only individuals who have filed for refund claims with defendant relating to the tax basis of cash or stock received in demutualization transactions and "have either had those claims denied by Defendant or have had Defendant [take] no action on those claims and more than six months has passed from the date of filing those claims with the Defendant ..." *See* Pl.'s Mot. for Class Cert. at 2. Defendant presumably denied all such claims on the premise that the individual's tax basis in the cash or stock received in connection with demutualization transactions was zero. Therefore, plaintiff has defined the class such that the United States acted or refused to act on grounds generally applicable to the class.

## B. Predominance of Common Issues of Fact or Law

■ Under RCFC 23(b), a class action may be maintained if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. It is not sufficient that common questions merely exist, as is true for purposes of Rule 23(a)(2). 7AA WRIGHT, MILLER & KANE § 1778. "[T]he predominance criterion is far more demanding."

*Amchem Products, Inc.*, 521 U.S. at 624, 117 S.Ct. 2231.

Defendant's sole substantive argument in opposition to plaintiff's motion for class certification is that tax refund actions are never suitable for class certification because questions affecting individual potential class members would necessarily predominate over any common issues of fact or law. Def.'s Opp. to Pl.'s Mot. for Class Cert. at 2–6. Citing *Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932) *modified*, 284 U.S. 599, 52 S.Ct. 264, 76 L.Ed. 514 (1932), defendant notes that, "the ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax." Def.'s Opp. to Pl.'s Mot for Class Cert. at 4. In a refund action the taxpayer's entire tax liability under the particular tax return at issue is open for redetermination. *Fisher v. United States*, 80 F.3d 1576, 1580 (Fed.Cir.1996); *Dysart v. United States*, 169 Ct.Cl. 276, 282, 340 F.2d 624, 628 (1965). It is not sufficient that a taxpayer can prevail on the particular items on which he sues, for he may have underpaid with respect to other components; only if the overall balance moves his way can he recover. *Dysart*, 169 Ct.Cl. at 282, 340 F.2d at 628. Therefore, defendant argues, resolution of the common issue of the correct tax basis of policyholders in a demutualization transaction would not establish that any individual class member was entitled to a refund. Def.'s Opp. to Pl.'s Mot. for Class Cert. at 5. Rather, each potential class member would have to individually establish an overpayment in the year at issue. *Id.*

*Lewis, Fisher,* and *Dysart* do not address class certification in tax refund actions. In *Lewis*, the Supreme Court held that the government could offset a tax refund with a subsequently discovered tax deficiency arising from the same return, although the statute of limitations for the deficiencies to be assessed independent of a claim for refund

had run. 284 U.S. at 282–83, 52 S.Ct. 145. In *Dysart*, The Court of Claims held that the Government had an unconditional right to raise such a setoff in a refund claim without having to appeal to the court's discretion or evaluation of the particular equities of the case. 169 Ct.Cl. at 281–82, 340 F.2d at 628. In *Fisher*, the Court of Appeals for the Federal Circuit held that the Government had the right to offset the interest on a previously undiscovered deficiency, although the statute of limitations to request the interest independent of plaintiff's refund claim had run. 80 F.3d at 1581. While these cases establish that defendant has the right to seek offsets, they do not clarify whether that fact precludes class certification.

It appears that relatively few cases have addressed class certification in the context of tax refund claims. In *Lipsett v. United States*, the Southern District of New York denied a request for class certification in a federal income tax refund suit. 37 F.R.D. 549 (S.D.N.Y.1965). Eleven petitioners sought to intervene in a tax refund action pursuant to FRCP 24(b)(2), predicated upon the contention that the tax suit as originally filed was a spurious class action with 94 prospective plaintiffs.[6] *Id.* at 551. The court found that because only 14 potential plaintiffs had demonstrated that they had satisfied the jurisdictional prerequisites for bringing a tax refund action, petitioners had failed to demonstrate numerosity sufficient for a class action. *Id.* at 552. The court then considered whether permissive intervention under FRCP 24 would be appropriate as an alternative.[7] *Id.* In deciding that it was not, the court stated:

> The nature of a tax refund action displays the improvidence of the use of intervention here. Since a tax refund action involves in effect a reaudit of the individual taxpayer's return for the time period in question (*See Lewis v. Reynolds*, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932)), and not merely

---

**6.** Prior to 1966, actions based solely on common questions were entertained under Rule 23(a) and were called "spurious" class actions. 7AA WRIGHT, MILLER & KANE, § 1777.

**7.** FRCP 24(b) provides in relevant part, "Upon timely application anyone may be permitted to

intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common . . . ."

the ground on which the refund is sought, what would be tried were the relief granted, would be a composite action adjudicating the validity of each item on fourteen different returns. It is difficult to conceive of a situation where the original action would be more hindered than in such a chaotic suit.

*Id.*

Similarly, in *Saunooke v. United States*, 8 Cl.Ct. 327 (1985), the United States Claims Court denied a motion for class certification in an action seeking a refund of Federal income taxes. *See* 8 Cl.Ct. at 333. The Court stated that "[t]his case is particularly ill-suited for class certification by virtue of its status as a tax refund claim." *Id.* at 330. The court then stated:

Plaintiffs recognize that strict adherence to sovereign immunity mandates that this court cannot gain subject matter jurisdiction over a tax refund action until each member of the proposed class has paid his entire assessed deficiency and filed a timely claim for refund pursuant to 26 U.S.C. § 7422(a). *Frise v. United States*, 5 Cl.Ct. 488, 490 (1984) (citing cases); *B & M Gross Corp. v. United States*, 4 Cl.Ct. 792, 794 (1984). Thus far only the named plaintiffs have satisfied the jurisdictional preconditions.

*Id.* As discussed *supra* at Section I, the class in this case is defined such that all prospective members would necessarily have satisfied the jurisdictional prerequisites for bringing a tax refund claim. Therefore, jurisdictional issues alone do not preclude class certification in this case.

However, the court in *Saunooke* proceeded to state that:

Moreover, evidentiary considerations render impractical the disposition of tax refunds as class actions . . . . To prevail each individual must not only establish the error in his particular assessment, but also the correct amount of taxes. *E.g., Luce v. United States*, 4 Cl.Ct. 212, 222 (1983); *Viereck v. United States*, 3 Cl.Ct. 745, 750 (1983). As with the burden of proof in the court with respect to damages, it is virtually impossible in a class action to achieve the individualized results demanded under this burden of proof.

*Id.* at 331.

The denial of class certification in *Saunooke* was based in part on the premise that class actions are "generally disfavored" in the Court of Claims and should be reserved only for "extraordinary circumstances." *Id.* at 329. As discussed *supra* at Section II, this is no longer the case following the 2002 revisions to RCFC 23. In addition, the 2002 revisions added RCFC 23(c)(4)(A), which provides that "[w]hen appropriate . . . an action may be brought or maintained as a class action with respect to particular issues . . . ." This provision would have enabled the Court to certify a class as to the common issue of tax law, and permitted individualized refund determinations separate from the class action.

More recent jurisprudence indicates that class actions are not necessarily precluded in tax refund cases. In *Appoloni v. United States*, the Western District of Michigan certified a class of similarly situated taxpayers seeking a refund for Federal Insurance Contributions Act ("FICA") tax withheld on payments that they received in exchange for their rights of tenure and just cause employment. 218 F.R.D. 556 (W.D.Mich.2003) *modified by* 219 F.R.D. 116 (2003). The court recognized that *Saunooke* had previously held that tax refund cases were ill-suited for class treatment, 8 Cl.Ct. at 330, but noted that since *Saunooke* was decided, other decisions from the Court of Federal Claims have recognized that a class action may be appropriate where it is the most fair and efficient method of resolving a dispute. 218 F.R.D. at 560. For this reason, and because the court found that plaintiffs had met the requirements of FRCP 23(a) and (b), the court certified the class. *Id.* at 563.

Similarly, in *Klender v. United States*, the Eastern District of Michigan certified a class of taxpayers seeking tax refunds for funds they claimed were wrongfully withheld under FICA. 218 F.R.D. 161 (E.D.Mich.2003) *modified by* 218 F.R.D. 551 (2003). The court found that "deciding the single common legal issue for a certified class would be superior to other methods of adjudicating the claims

that appear to affect a large number of taxpayers." *Id.* at 168. The court also determined that once the common legal issue was decided, individualized damages assessments could be determined by a special master or another reasonable method. *Id.*

The Court of Federal Claims has never certified a class in a tax refund action. However, the Court does not find that class certification is necessarily precluded in tax refund actions. The fact that defendant could audit the tax returns of individual class members to determine whether any previously undiscovered deficiencies should be offset against potential refunds standing alone is insufficient to establish that individual issues predominate in the litigation. For class certification to be proper, it is only necessary that common questions predominate, not that they be dispositive of the entire action for every class member. *Bynum v. District of Columbia,* 214 F.R.D. 27, 38 (D.D.C.2003); *Gibbs Props. Corp. v. Cigna Corp.,* 196 F.R.D. 430, 440 (M.D.Fla.2000); *Jefferson v. Security Pac. Fin. Servs.,* 161 F.R.D. 63, 67 (N.D.Ill.1995); 7AA WRIGHT, MILLER & KANE § 1778. As discussed *supra* at Section III. B., plaintiff asserts that the claim of every prospective class member presents the common issue of the correct tax basis of stock or cash received in demutualization transactions. Regardless of individual offsets, resolution of that issue will substantially affect all prospective plaintiffs' claims. Furthermore, if defendant were to prevail on the issue of the correct tax basis of the policyholders in a demutualization transaction, the issue of offsetting deficiencies against refunds for individual class members would be irrelevant because the prospective class members would not be entitled to refunds at all.

The Court agrees that offsetting deficiencies against the prospective refunds of specific class members involves individualized determinations that would likely not be appropriate for class treatment. However, RCFC 23(c)(4)(A) would enable the Court to certify a class for the limited purpose of determining the correct tax basis of policyholders in demutualization transactions. The class could then be decertified for purposes of determining whether individual plaintiffs

were in fact entitled to recover refunds. While it is unclear that this would ultimately achieve significant efficiencies over separate actions being brought by each prospective plaintiff, it is one potential alternative for dealing with the individualized determinations that defendant points out would be required if the tax basis issue were resolved favorably to class members.

In finding that class certification is not necessarily precluded in tax refund actions, the Court does not find that plaintiff has carried the burden of demonstrating that common issues of fact or law predominate in this case. In its Motion for Class Certification, plaintiff asserts that the question of the correct tax basis for cash or stock received in a demutualization transaction is the "primary or only one at issue in the refund claims filed by the members of the proposed class." Pl.'s Mot. for Class Cert. at 6. However, plaintiff's unsubstantiated assertion that the tax basis is the primary issue in the refund claims filed by members of the proposed class does not make it so. Clearly, it would not be the only issue in those cases where the IRS sought to offset previously undiscovered deficiencies.

In addition, the class proposed by plaintiff is extremely broad. It is not limited to taxpayers who received cash or stock in the demutualization of Sun Life Assurance, but rather, consists of taxpayers who received cash or stock in any demutualization transaction. It is unclear whether the demutualization of each life insurance company presents different facts and circumstances relevant to determining the tax basis of the cash or stock received. *See* Def.'s Cross–Motion for Summ. J. and Opposition to Pl.'s Mot. for Partial Summ. J. at 2. Plaintiff has failed to present any evidence on this point. If individualized determinations were required to determine the correct tax basis for cash or stock received in the demutualization of each life insurance company, individual issues of fact and law would predominate as the proposed class is currently defined.

When addressing the requirements for class certification, the trial court must take a "close look" at the predominance and superiority criteria of Rule 23(b)(2). *Amchem Prods., Inc.,* 521 U.S. at 615, 117 S.Ct. 2231

("Rule 23(b)[(2)] includes a nonexhaustive list of factors pertinent to a court's 'close look' at the predominance and superiority criteria ....""). Plaintiff's arguments regarding the predominance of common questions of fact or law fail to meet this exacting standard. However, the Court will permit plaintiff to present additional evidence demonstrating that common questions of fact or law predominate, should it choose to file a renewed Motion for Class Certification. *See* RCFC 23(c)(1)(C). If plaintiff renews the Motion for Class Certification, defendant will have the opportunity to present arguments regarding the predominance *vel non* of individual issues of fact or law in this specific case. *See, e.g., Abrams v. United States,* 57 Fed.Cl. 439, 440–41 (2003); *Black v. United States,* 24 Cl.Ct. 471, 477–78 (1991).

## C. Superiority

■ The superiority requirement is met where "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Barnes,* 68 Fed.Cl. at 499. RCFC 23(b)(2) provides a list of non-exhaustive factors to be considered in determining whether the superiority requirement has been met, including the interest of members of the class in individually controlling the prosecution of separate actions, the extent and nature of any litigation already commenced concerning the controversy, and the difficulties likely to be encountered in the management of a class action.[8] *See* RCFC 23(b)(2).

One factor to be considered in assessing the interest of prospective class members in individually controlling the prosecution of separate actions is whether the claims of many claimants are so small that it is doubtful they would be otherwise pursued. *Barnes,* 68 Fed.Cl. at 499–500; *Quinault Allottee Ass'n,* 197 Ct.Cl. at 140–41, 453 F.2d at 1276; *see also Abrams,* 57 Fed.Cl. at 440–41 ("This court has considered the size of

potential awards in deciding whether to certify a class."). There is no magic number below which claims are automatically small enough and above which class certification would be inappropriate. *Favreau,* 48 Fed.Cl. at 779 (holding that claims between $300 and $20,000 were insufficient to justify the cost of pursuing litigation individually). The relevant inquiry is whether the class members would pursue their individual claims if the class were not certified. *Christopher Vill., LP,* 50 Fed.Cl. at 644; *Taylor,* 41 Fed.Cl. at 447 ("Although a $25,000 claim is larger than [ ] is typically involved in class actions, it is unlikely that each plaintiff would bring an individual claim.").

In plaintiff's Motion for Class Certification, plaintiff states, "The Plaintiff is informed and believes that most of the claims are for relatively small amounts compared to the cost of pursuing individual litigation." Pl.'s Mot. for Class Cert. at 4. Plaintiff does not clarify who it was "informed" by, nor does it provide any examples or information regarding the actual dollar amount of prospective claims. In the same filing, plaintiff alleged that it was unable to identify the prospective class members, and therefore, it is unclear how plaintiff would have been able to gather information regarding the size of their claims. In this case, the only evidence presented to the Court regarding the size of potential claims is that plaintiff itself seeks a refund of $5,725. Compl. ¶ 2. This information alone is insufficient for the Court to find that the claims of many claimants are so small that it is doubtful they would be otherwise pursued.

Another factor to be considered in determining whether a class action is superior to other available methods for adjudication of a controversy is the difficulty likely to be encountered in the management of a class action. *See* RCFC 23(b)(2). A class action must represent the best "available method[ ] for the fair and efficient adjudication of the controversy." See FRCP 23(b)(3). It is pursuant to this requirement that the court should address the difficulties likely to be encountered in the management of a class

---

8. In their briefs, neither party addressed the extent and nature of litigation already commenced with respect to the issues raised in this action.

Presumably, the parties do not believe that it weighs heavily in determining whether the superiority requirement has been met.

action. *Johnston v. HBO Film Mgmt.,* 265 F.3d 178, 194 (3rd Cir.2001).

If the Court certifies the class as to all issues in this litigation, there are likely to be significant difficulties in determining individual class members' entitlement to refunds in light of potential offsets. However, if the Court certifies a class pursuant to 23(c)(4)(A) for the limited question of the correct tax basis for cash or stock received in a demutualization transaction, individualized assessments will still need to be made regarding the entitlement of class members to refunds in light of any offsets. For this reason, it is unclear that a class action would achieve significant economies of time, effort, and expense overall. Plaintiff argues that "[a]s a practical matter, Plaintiff believes that once the legal question has been settled, the parties will be able to work out a satisfactory procedure to resolve the claims of the members of the proposed class." Pl.'s Mot. for Class Cert. at 7. However, the mere possibility of a subsequent settlement does not render a class action manageable.

Because plaintiff has failed to demonstrate two out of three of the non-exhaustive factors identified in RCFC 23(b)(2), the Court finds that plaintiff has failed to establish that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. However, the Court will permit plaintiff to present additional evidence demonstrating the superiority of a class action, should it choose to file a renewed Motion for Class Certification.

### CONCLUSION

For the reasons stated above, plaintiff's Motion for Class Certification is DENIED without prejudice. The Court will permit plaintiff to present additional evidence of the sort described in this Opinion and Order, should plaintiff choose to file a renewed motion for class certification in light of such additional evidence. If plaintiff does so, defendant will have an opportunity to respond to plaintiff's arguments consistent with the Court's rejection of defendant's broad con-

tention that tax refund suits are never suitable for class certification.

IT IS SO ORDERED.